# Supreme Court of Florida

----------

No. SC14-2499
----------

**THE FLORIDA BAR,**
Complainant,

vs.

**PHILLIP J. BRUTUS,**
Respondent.

[May 4, 2017]

PER CURIAM.

We have for review a referee's report recommending that Respondent, Phillip J. Brutus, be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and suspended from the practice of law for ninety days, followed by one year on probation. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings of fact and recommendations as to guilt. As discussed in this opinion, we disapprove the referee's finding, as an aggravating factor, that Brutus's misconduct in this case was the result of a dishonest or selfish motive. Nonetheless, we conclude that his failure to maintain funds entrusted to him, together with other acts demonstrating

negligence in managing his trust account, constitutes serious misconduct warranting a suspension longer than ninety days. We disapprove the referee's recommended sanction, and instead suspend Brutus from the practice of law for one year followed by two years on probation.

**FACTS**

In December 2014, The Florida Bar filed a complaint against Brutus, alleging that he engaged in misconduct in violation of the Bar Rules. A referee was appointed to consider the matter. In the proceedings before the referee, Brutus and the Bar jointly submitted a stipulation as to the facts. The referee then held a final hearing to address the alleged rule violations, and a separate hearing to address sanctions. Following these hearings, the referee submitted her report for the Court's review, in which she made the following findings and recommendations.

As stipulated by the parties, Brutus represented a client, the wife, in a dissolution of marriage proceeding. The couple's marital residence was the only asset at issue in the case. Brutus learned that the former husband had taken out a $100,000 home equity loan against the property, and spent $40,000 of the funds. Brutus filed a motion in the trial court to preserve marital assets. As a result, the presiding judge issued an order directing that the remaining funds, approximately $60,000, be deposited into Brutus's trust account.

The former husband provided the $60,000 for deposit on March 3, 2008. At that time, there was no court order or settlement agreement indicating how the money would be distributed. Nonetheless, beginning on March 13, 2008, Brutus began disbursing the funds—he disbursed $46,128.55 to the client, $12,475 to himself in attorney fees, and the remainder to pay costs. Brutus asserts that he made these dispersals based on his genuine understanding of Florida's equitable distribution principles, believing that his client held a fifty percent equitable interest in the marital home or any proceeds derived from the home, including prior refinances and equity loans.

On September 15, 2009, the parties entered into a marital settlement agreement. Pursuant to this agreement, the client agreed to return $12,000 of the money disbursed to her; the refund would be applied as a credit toward the former husband's child support obligations. The trial court did not require Brutus to re-deposit any funds into the trust account because the court concluded that the dispute had been resolved in the marital settlement agreement. However, the court did refer the matter to the Bar for investigation.

Additionally, during the course of the Bar's investigation, the Bar's staff auditor found several examples indicating that Brutus did not properly maintain his trust account in accordance with the trust accounting rules. In one instance, records indicated that as of June 2010, Brutus was holding $32,583.62 in the trust

account on behalf of a client, and that he should have maintained this amount through April 2011. However, the Bar's investigation revealed eight different occasions during this period when the balance in the trust account was less than the amount that should have been held just for this client. In a second example, in September 2008, Brutus deposited earned fees in the trust account, commingling his own funds with those of his clients. And finally, the Bar discovered at least three overdrafts from the trust account during the period from July 30, 2010, through September 14, 2010.[1] However, no bank reported to the Bar any check returned for insufficient funds, and no client or other person has filed any complaint against Brutus. Brutus has acknowledged the shortages in the trust account, and he concedes that he did not properly maintain the account.

Based on these facts, the referee recommends that Brutus be found guilty of violating the following Bar Rules: 4-3.4(c) (a lawyer must not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists); 5-1.1(a) (a lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation); and

---

1. It appears that, in the case of at least one overdraft, when Brutus learned of the shortage, he immediately deposited the funds back into the trust account. Brutus also asserts that one overdraft occurred when he mistakenly wrote a check from the wrong account.

5-1.1(b) (money or other property entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose).

The referee found six aggravating factors in this case: (1) dishonest or selfish motive; (2) pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge the wrongful nature of the misconduct; (5) vulnerable victim; and (6) substantial experience in the practice of law. The referee also found three mitigating factors: (1) no prior disciplinary record; (2) good character and reputation in the community; and (3) interim rehabilitation.

Ultimately, based on her findings of fact, recommendations as to guilt, the aggravating and mitigating factors found, and the Florida Standards for Imposing Lawyer Sanctions and case law, the referee recommends that Brutus be suspended from the practice of law for ninety days, followed by one year on probation. During his probation, the referee recommends that Brutus be required to: (1) retain the services of a certified public accountant to review his trust account records on a monthly basis; (2) submit quarterly statements to the Bar, prepared by the certified public accountant, specifying whether Brutus is in compliance with the trust accounting rules, with attached monthly reconciliations, copies of the bank statements, and a list of clients with their individual trust account balances; (3) pay a $100 quarterly monitoring fee to the Bar; and (4) attend and successfully complete the Florida Bar's Ethics School and Trust Accounting Workshop.

The Bar has filed a Notice of Intent to Seek Review of Report of Referee, challenging the referee's recommended sanction; it argues a one-year suspension is the appropriate discipline. Brutus has filed a cross-notice of review, challenging the referee's findings in aggravation and mitigation, as well as the recommended sanction. Brutus urges the Court to order a public reprimand.

**ANALYSIS**

Because the parties stipulated as to the facts, we approve the referee's findings of fact without further discussion. We also approve the referee's recommendations as to guilt. On cross-review, Brutus asks the Court to disapprove several of the referee's findings as to aggravating factors and to find additional mitigating factors. This Court has stated, "[l]ike other factual findings, a referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. A referee's failure to find that an aggravating factor or mitigating factor applies is due the same deference." Fla. Bar v. Germain, 957 So. 2d 613, 621 (Fla. 2007) (internal citation omitted).

Brutus first contends there is not competent, substantial evidence to support the referee's finding that he acted with a dishonest or selfish motive. We agree. The referee's report, based upon the joint stipulation as to the facts, indicates that Brutus disbursed marital asset funds from his trust account to his client based on

- 6 -

his "genuine understanding" of Florida law, believing that his client was entitled to a fifty percent equitable interest in the marital home. Brutus now acknowledges that the disbursements were improper, and that he had an obligation to hold the marital assets in trust pending a settlement agreement and court order in the dissolution case. He also testified before the referee that he did not intentionally seek to violate the trial court's order, and that his actions were "reckless" and "irresponsible" rather than intentionally dishonest. The Bar argues in support of the referee's finding that, because Brutus disbursed money from the trust account to pay his own attorney fees, his motives were inherently selfish. However, there is no evidence to indicate that Brutus was not entitled to fees in his representation of the client, and the Bar did not allege that the fee was prohibited or excessive in violation of Bar Rule 4-1.5. Collecting a legally proper attorney's fee, without more, is not itself a selfish or dishonest act. The Bar also points out that Brutus has admitted to violations of the trust accounting rules for his negligent bookkeeping practices, resulting in shortages in the account. However, the Bar is not alleging that Brutus <u>misappropriated</u> client funds, only that he was negligent in maintaining his trust account. Brutus testified before the referee that the shortages likely occurred because his office would write checks to cover court costs and filing fees before depositing the checks from clients written to cover those disbursements. While we find these careless trust accounting practices concerning, they do not

evidence a dishonest or selfish motive. Accordingly, we disapprove the referee's finding that Brutus acted with a dishonest or selfish motive.

Brutus next contends there is no evidence to support the referee's finding that he has refused to acknowledge the wrongful nature of his actions. He alleges that his testimony does demonstrate his understanding and acceptance that he made a serious mistake. The referee necessarily weighed Brutus's testimony, evaluated his credibility, and ultimately concluded that he had not fully acknowledged the wrongful nature of his actions. This Court has long held, "[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect." Fla. Bar v. Tobkin, 944 So. 2d 219, 224 (Fla. 2006) (quoting Fla. Bar v. Thomas, 582 So. 2d 1177, 1178 (Fla. 1991)). We do not find clear and convincing evidence that the referee improperly considered this aggravating factor, and we approve the finding.

Finally, Brutus contends there is no evidence to support the finding that the victim of his misconduct, the client, was vulnerable. However, Brutus himself testified before the referee that his client needed help, that she could not afford to pay much money to secure a divorce, and that she was homeless. He has also acknowledged that, as a part of the marital settlement agreement with her former husband, the client was required to return $12,000 to the former husband, credited

toward his child support obligations. Brutus's client relied on him to make decisions in her best interest, and his improper disbursements could have caused her serious harm. Accordingly, we approve the referee's remaining findings in aggravation and the findings in mitigation in full.

We next address the referee's recommended sanction, a ninety-day suspension. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So. 2d 852, 854 (Fla. 1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So. 2d 555, 558 (Fla. 1999).

The Court has long held that the misuse of client funds "is one of the most serious offenses a lawyer can commit. . . . However, in imposing discipline for trust account violations, this Court's case law suggests a clear distinction between cases where the lawyer's conduct is deliberate or intentional and cases where the lawyer acts in a negligent or grossly negligent manner." Fla. Bar v. Weiss, 586 So. 2d 1051, 1053 (Fla. 1991). Here, the stipulated facts indicate that Brutus did not intentionally misappropriate client money for his own personal use. Still, we find

his negligent conduct troubling. Brutus has repeatedly failed to ensure that his own conduct, and his law firm's trust accounting practices, are in strict compliance with the ethical and trust accounting rules. In the dissolution of marriage proceeding, Brutus clearly was aware of the court's order directing that marital funds be held in his trust account; nonetheless, he deliberately disbursed the funds to his client, without an order resolving the matter and without the court's knowledge or authorization. Additionally, Brutus has admitted to negligence in maintaining his trust account—his poor record keeping was such that Brutus could not determine when funds held on behalf of a client dropped below the balance that should have been maintained in the account; he commingled trust account funds with earned fees; and there is evidence of three overdrafts from the trust account during a two-month period in 2010.

Given Brutus's serious misconduct, we conclude that the referee's recommendation of a ninety-day suspension is not supported. Our prior decisions make clear that even negligence in maintaining a trust account warrants a lengthier suspension requiring proof of rehabilitation. See Fla. Bar v. Mason, 826 So. 2d 985, 986-87 (Fla. 2002) (suspending attorney for two years for errors in her trust accounting, rather than intentional misappropriations, resulting in shortages in the account); Fla. Bar v. Neu, 597 So. 2d 266, 266-67, 270 (Fla. 1992) (suspending attorney for six months who was appointed guardian of an incapacitated person

and withdrew funds from the guardianship account without the court's authorization, and who comingled personal and client funds, where the Court found no evidence that attorney intended to convert client funds or that conduct was dishonest or deceitful).

Considering Brutus's conduct in violation of his obligation to the trial court and his repeated negligence in maintaining his trust account, together with the aggravating and mitigating factors discussed above, we conclude that a one-year suspension is appropriate. Additionally, upon his reinstatement, Brutus is ordered to serve two years on probation, during which time he must comply with the terms and conditions of probation set forth in the referee's report.

## CONCLUSION

Accordingly, Phillip J. Brutus is hereby suspended for one year; upon reinstatement, Brutus shall serve two years on probation under the terms and conditions set forth in the referee's report. The suspension will be effective thirty days from the date of this opinion so that Brutus can close out his practice and protect the interests of existing clients. If Brutus notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Brutus shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further,

Brutus shall accept no new business from the date this opinion is filed until he is reinstated.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Phillip J. Brutus in the amount of $11,787.50, for which sum let execution issue.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS SUSPENSION.

Original Proceeding – The Florida Bar

John F. Harkness, Jr., Executive Director, The Florida Bar, Tallahassee, Florida; Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida; and Adria E. Quintela, Staff Counsel, The Florida Bar, Sunrise, Florida,

for Complainant

Keven Leveille of The Law Office of Keven Leveille, P.L., Sunrise, Florida,

for Respondent